IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| **ANDREW M.**,  )  | |
| Plaintiff,  )  | |
| )  | |
| v.  )  | Civil Action No. CBD-20-2858 |
| )  | |
| **KILOLO KIJAKAZI**[1],  )  | |
| )  | |
| **Commissioner,**  )  | |
| **Social Security Administration,**  )  | |
| )  | |
| **Defendant.**  )  | |

**MEMORANDUM OPINION**

Andrew M. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Administrative Law Judge ("ALJ") denied Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 16, Plaintiff's Alternative Motion for Remand ("Plaintiff's Alternative Motion"), ECF No. 16, and Defendant's Motion for Summary Judgment ("Defendant's Motion"), ECF No. 17. The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Defendant's Motion, **GRANTS** Plaintiff's Alternative

---

[1] When this proceeding began, Andrew Saul was the Acting Commissioner of the Social Security Administration. On July 9, 2021, Kilolo Kijakazi was sworn in as Commissioner and is therefore, automatically substituted as a party. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

1

Motion, and **REMANDS** the ALJ's decision pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. A separate order will issue.

## I. Procedural Background

On April 4, 2018, Plaintiff filed for DIB under Title II of the SSA, alleging disability beginning September 22, 2016. R. 17. Plaintiff alleged disability due to radiculopathy in the cervical region, spinal stenosis in the cervical region, and limited dexterity in his hands. R. 69, 80. Plaintiff's claim was initially denied on June 26, 2018, and upon reconsideration on November 21, 2018. R. 17. An administrative hearing was held on December 6, 2019. R. 17. On January 9, 2020, the ALJ denied Plaintiff's claim for DIB. R. 28. Plaintiff sought review by the Appeals Council, which concluded on September 9, 2020, that there was no basis for granting the request for review. R. 1. Plaintiff subsequently filed an appeal with this Court. ECF No. 1.

## II. Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2019). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163-64 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a

mere scintilla." *Russell*, 440 F. App'x at 164. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) (2012). The

Code of Federal Regulations outlines a five-step process (Five–Step Analysis) that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) (2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

20 C.F.R. § 404.1520(a)(4) (2012). Plaintiff has the burden to prove that he is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. § 404.1545(b)–(c) (2012). In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *see also* 20 C.F.R. § 404.1545(a)

(2012).  The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  *See Thomas*, 916 F.3d at 311; SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996).  "Once the ALJ has completed the function-by-function analysis, the ALJ can make a finding as to the claimant's RFC."  *Thomas*, 916 F.3d at 311.  "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence."  *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).  "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

### III.   Analysis

The ALJ evaluated Plaintiff's claim using the Five–Step Analysis.  R. 19–28.  At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since September 22, 2016.  R. 19.  At step two, under 20 C.F.R. § 404.1520(c) the ALJ determined degenerative disc disease of the cervical spine, as Plaintiff's only severe impairment.  R. 20.  The ALJ stated that the listed impairment was severe because it "significantly limit[s] [Plaintiff's] ability to perform basic work activities."  R. 20.  At step three, the ALJ determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526)."  R. 21.  Before turning to step four, the

ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

> [Plaintiff] can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; [Plaintiff] can never climb ladders, ropes or scaffolds; [Plaintiff] can occasionally reach overhead with the bilateral upper extremities; [Plaintiff] can frequently handle, finger, and feel with the bilateral upper extremities; [Plaintiff] can frequently operate hand controls with the bilateral upper extremities.

R. 21. At step four, the ALJ determined Plaintiff can perform his past relevant work as an assistant store manager and as a shift supervisor. R. 26. The ALJ ultimately found that Plaintiff has not been under a disability, as defined in the SSA. R. 28.

On appeal, Plaintiff argues that there is no genuine dispute as to any material fact; Defendant's final decision is not supported by substantial evidence and is against broad public policy; and Defendant's decision is based upon an incorrect application of the law. Pl.'s Mot. 1, ECF No. 16. Plaintiff avers that the ALJ failed to consider all available evidence regarding Plaintiff's ability to work. Pl.'s Mem. in Supp. of Pl.'s Mot. 7, ECF No. 16. Specifically, Plaintiff argues that the ALJ improperly evaluated the statements from Plaintiff's treating physicians pursuant to 20 C.F.R. § 404.1520(c). *Id.* at 12–20. Plaintiff also claims that the ALJ failed to explain why the opinions of the state agency consultants were more controlling. *Id.* at 19.

Plaintiff asserts that "[t]he Courts have also long acknowledged that an ALJ may not select and discuss only that evidence that favors his ultimate conclusion."[2] *Id.* at 8–9. Plaintiff also argues that the ALJ did not properly consider Plaintiff's objective evidence and statements throughout the record. *Id.* at 9. Plaintiff alleges that the ALJ failed to "build an accurate and logical bridge." Pl.'s Resp. 5, ECF No. 18. Plaintiff avers that Dr. Su opined in four different

---

[2] The Court clarifies Defendant's argument for conciseness. Defendant is essentially arguing that the ALJ erroneously cherrypicked evidence.

6

statements that Plaintiff's disability was permanent, yet none of the reports were referenced in the RFC assessment. *Id.* at 9–10. Plaintiff asserts that Dr. Su's other statements were incorrectly evaluated. *Id.* at 11.

Defendant contends that the ALJ properly evaluated the opinion evidence. Def.'s Mem. in Supp. of Def.'s Mot. 4, ECF No. 17–1. Defendant avers that "the ALJ's written decision shows how the ALJ analyzed Dr. Su's opinions in accordance with the regulations, and substantial evidence supports the ALJ's evaluation of the medical opinions in the record." *Id.* at 4–5. Defendant argues that the ALJ considered Plaintiff's surgeries in March 2017 and January 2018 and accounted for them in the RFC. *Id.* 5–6. Defendant also argues that since the ALJ did not find Dr. Su's, Dr. Khan's, or Dr. Levin's opinions persuasive, the ALJ was not required to consider the factors in 20 C.F.R. § 404.1520c(c)(3)-(5). *Id.* at 11. For the reasons mentioned below, the Court finds reversible error.

Since, Plaintiff argues that the ALJ failed to "build an accurate and logical bridge," this Court will address his issues within the realm of whether substantial evidence supports the ALJ's RFC. The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *Grimes v. Berryhill*, No. CV TMD 17-1794, 2018 WL 4206936, at *4 (D. Md. Sept. 4, 2018) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). "In other words, the issue before the Court is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.*

In making the RFC assessment, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms. *See* 20 C.F.R. § 404.1545(a). The ALJ

7

likewise must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (S.S.A.).

A proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. *Thomas*, 916 F.3d at 312. The second component, the ALJ's logical explanation, is just as important as the other two. *Id.* Indeed, our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion. *Id.* (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). "The ALJ has the obligation to consider *all* relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (emphasis added). The ALJ must also include "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).

For medical claims filed on or after March 27, 2017, an ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," including those from a claimant's medical source. 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider how persuasive he finds all the medical opinions and prior administrative medical findings by using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) other factors that tend to support or contradict the opinion, such as the

medical source's familiarity with other evidence in the claim, and understanding of the disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). The first two factors, supportability and consistency, are the most important in determining the persuasiveness of a medical source's opinion. 20 C.F.R. § 404.1520c(a). In evaluating the supportability of a medical opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). In assessing the consistency factor, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

Here, the ALJ considered several medical opinions and discussed whether the opinions were persuasive or not. When evaluating Plaintiff's treating physicians, the ALJ found Dr. Berger's opinion that Plaintiff "may have periodic flares of joint, neck pain and stiffness which may interfere with lifting items heavier than 20 pounds," somewhat persuasive, noting that "it was consistent with and supported by Dr. Berger's treatment records." R. 24. Dr. Levin, one of Plaintiff's doctors, opined that:

> [Plaintiff] can lift up to 20 pounds occasionally, but never carry; [Plaintiff] can sit up to one hour a day, stand up to one hour a day, and walk up to 30 minutes; [Plaintiff] can never reach overhead and never reach at all with the left arm; [Plaintiff] can occasionally finger, feel, push, and pull; [Plaintiff] can occasionally climb ramps and stairs, but never balance, stop, kneel, crouch, crawl, or climb ladders or scaffolds; and [Plaintiff] can tolerate only very limited exposure to environmental conditions."

R. 24–25. The ALJ found Dr. Levin's opinion, somewhat persuasive because "the only support [he] provided for these significant limitations, was 'see chart.'" R. 25. The ALJ explained that the record is consistent with the proposed limitations of lifting up to 20 pounds, but Dr. Levin

also proposed some limitations that were too restrictive. R. 25. Another one of Plaintiff's doctors, Dr. Khan, opined that:

> [Plaintiff] could lift up to ten pounds but never carry; [Plaintiff[ could sit, stand, and walk one hour each; [Plaintiff] requires 'taking a break from continuous sitting/standing/walking for 1-2 hours'; [Plaintiff] can never reach overhead with the right (dominant) hand; [Plaintiff] can occasionally reach in other directions, handle, finger, feel, push, and pull with the right hand; there are no limitations on the left hand; [Plaintiff] can occasionally operate foot controls; [Plaintiff] can climb ramps and stairs frequently, but never balance, stop, kneel, crouch, crawl, or climb ladders or scaffolds; and [Plaintiff] can tolerate only very limited exposure to environmental conditions.

R. 25. The ALJ did not find Dr. Khan's opinion persuasive and explained that Dr. Khan: "provided another check-the-box medical source statement"; "provided some support for her opinions by citing MRI results showing multilevel degenerative and post-operative changes"; "did not explain how [Plaintiff's] MRI results relate to the proposed limitations"; and "did not explain how [Plaintiff's] cervical impairment precludes a reduced range of light work." R. 25. limitations.

The ALJ considered a medical source statement from Dr. Su, Plaintiff's treating physician, dated September 25, 2019, that stated "[Plaintiff] is completely incapable of lifting, carrying, reaching, handling, fingering, feeling, pushing, pulling, operation of foot controls, climbing, balancing, stooping, kneeling, crouching, and crawling." R. 24. The ALJ noted that the check-the-box-form is "not at all persuasive," and that Dr. Su "supported his opinion only by stating that [Plaintiff] had multiple cervical surgeries without relief." R. 24. The ALJ also remarked that "if [Plaintiff] were as limited as Dr. Su suggests, [Plaintiff] would be incapable of performing basic activities of daily living, and would likely be confined to a nursing home." R. 24. The ALJ also considered a disability form from Dr. Su, dated September 22, 2016[3], that

---

[3] The Court notes that this form is not actually dated September 22, 2016, but just provides the date from when Plaintiff was disabled. (R. 711).

opined "[Plaintiff] could not sit, stand, or walk for any extended period, and that [Plaintiff] could not lift, climb, twist, bend, stoop, reach above the shoulders, operate machines, or write." R. 24. The ALJ noted that the form was not persuasive because Dr. Su did not adequately support her limitations, and the only evidence or explanation Dr. Su offered was that Plaintiff "develops muscles spasms intermittently." R. 24. The ALJ lastly considered a benefits form dated January 11, 2017, that indicated Plaintiff could "not perform even sedentary work due to exertional and nonexertional limitations." R. 24. The ALJ explained that this was not persuasive because Dr. Su, stated that Plaintiff's symptoms were expected to improve six weeks after surgery. R. 24.

When evaluating the state agency consultant's opinions, the ALJ found all of them persuasive. The ALJ explained that Dr. Totoonchie's opinion that "[Plaintiff] can perform the full range of light work," is largely persuasive because Dr. Totoonchie "supported this opinion by citing relevant evidence, including [Plaintiff's] history of neck surgery, the diagnostic imaging results, and [Plaintiff's] normal gait and normal strength." R. 25. The ALJ noted that the consultative examining physician, Dr. Gerald Lee, opined that Plaintiff can "'perform work-related activities such as walking, standing, sitting, speaking, and hearing,' but 'would experience difficulties with fine manipulations, handling objects repeatedly, and overhead reaching.'" R. 23–24. The ALJ found this opinion persuasive and explained that "[t]he consultative examination revealed reduced range of motion in the neck and shoulders, decreased grip strength, and decreased sensation in the hands." R. 24. The ALJ further explained that the evidence supports limitations in manipulation, handling, and reaching, and was consistent with Plaintiff's history of cervical fusions. R. 24. The ALJ also considered Dr. Najar's opinion that "[Plaintiff] could perform light work with occasional postural activities, no climbing ladders, ropes, or scaffolds, occasional overhead reaching, and frequent handling bilaterally," and found

it "largely persuasive," because "Dr. Najar supported this opinion by citing relevant evidence, including the MRI showing no evidence of thoracic outlet syndrome, multiple neck surgeries, and the consultative examination results." R. 25–26.

The Court finds that the ALJ erred for several reasons. First, the ALJ did not consider all of Dr. Su's medical source statements. As mentioned above, the new regulations state that an ALJ must consider and articulate how persuasive he finds all the medical opinions pursuant to the factors listed in 20 C.F.R. § 404.1520c(c). However, even though "an ALJ must articulate how persuasive they found all of the medical opinions and all prior administrative findings in the case records, the ALJ need not articulate *all* of the § 404.1520c(c) factors for *all* of the medical opinions." *Clara M. v. Kilolo Kijakazi, Acting Comm'r of Soc. Sec.*, No. CV 20-2581-BAH, 2022 WL 903457, at *4 (D. Md. Mar. 28, 2022) (citing 20 C.F.R. § 404.1520c(b)(1) (emphasis added)). Instead, "when a medical source provides multiple medical opinion(s) . . . [an ALJ] will articulate how [the ALJ] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.*

Here, Dr. Su provided six reports. The ALJ mentioned the UNUM disability form that appears to be from September of 2016 and another UNUM disability benefits form from January of 2017. (R. 690, 711). However, the ALJ did not address Dr. Su's other statements from October 2017, June 2018, or February 2019. R. 694–96, 697–98, 699–700, 705–07. Even though the ALJ does not need to articulate 20 C.F.R. § 404.1520c(c) factors for *all* of the medical opinions, the ALJ is still required to articulate how she considered the medical opinions from that source "together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5)." *See* 20 C.F.R. § 404.1520c(c). There is no evidence in the ALJ's analysis that

12

the ALJ considered all of Dr. Su's statements, even though the ALJ was permitted to explain how she considered her statements in a single analysis. Thus, the Court is left to speculate whether the ALJ considered all of Dr. Su's statements, as required by 20 C.F.R. § 404.1520c(c), and whether the ALJ's RFC is supported by substantial evidence.

> Defendant argues that:
>
> Although the ALJ did not discuss every single opinion or statement from Dr. Su, the unaddressed statements indicate the same limitations as Dr. Su's other opinions, which the ALJ properly evaluated (internal citations omitted) . . . and the ALJ specifically considered the most recent opinion from Dr. Su, dated September 2019 (internal citations omitted) . . . [and thus] properly considered the factors of supportability and consistency in evaluating Dr. Su's opinions.

Def.'s Mem. in Supp. of Def.'s Mot. 8. Even if it is the case that the limitations are the same, Dr. Su's primary diagnosis, secondary diagnosis, the symptoms reported by Plaintiff, were not the same on all six forms as evidenced by the ALJ's analysis. R. 24. Further, the ALJ specifically pointed to a couple of Dr. Su's analyses and specifically described why she rejected that particular statement, in separate paragraphs. For example, the ALJ explained that she did not find Dr. Su's opinions persuasive because she did not provide adequate explanation for her statements. The ALJ found that "Dr. Su supported h[er] opinion only by stating that [Plaintiff] had multiple cervical surgeries without relief"; "the only evidence or explanation Dr. Su offered is that [Plaintiff] "develops muscle spasms intermittently"; and "Dr. Su also reported that [Plaintiff's] symptoms were expected to improve six weeks after surgery." R. 24. However, in one of the opinions that the ALJ did not consider, Dr. Su supported her opinion by referencing an MRI and CT with areas of neural foraminal compromise." R. 694. Thus, even if the ALJ was permitted to summarize Dr. Su's medical statements, since there is no mention of the examinations Dr. Su considered at all in the ALJ's analysis, the Court cannot without

speculation, determine whether the ALJ considered all of Dr. Su's statements. Thus, remand is appropriate.

The Court is also persuaded by Plaintiff's argument that the ALJ did not consider all relevant evidence and engaged in cherry-picking. SSR 96-5p, states that:

> The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability. . . Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

SSR 96-5p, 1996 WL 374183, at *3, *6. (S.S.A.). Here, the ALJ referenced multiple reasons why she did not find Plaintiff's treating physicians opinions persuasive including: "Dr. Su supported his opinion only by stating that [Plaintiff] had multiple cervical surgeries without relief"; "the only evidence or explanation Dr. Su offered is that [Plaintiff] "develops muscle spasms intermittently"; "Dr. Su also reported that [Plaintiff's] symptoms were expected to improve six weeks after surgery"; "the only support Dr. Levin provided for these significant limitations was 'see chart'"; and "Dr. Khan did not explain how [Plaintiff's] MRI results relate to the proposed limitations." R. 24–25. The ALJ's explanations for why she did not find Plaintiff's treating physicians persuasive is because they did not explain the limitations. For instance, regarding Dr. Khan's medical statement, the ALJ explained that "it is reasonable that cervical spine impairment would cause limitations in reaching, lifting, carrying, and manipulative activities, but it is not apparent that it would cause significant limitations in standing, walking, and otherwise using the legs." The ALJ also stated that Dr. Khan did not attempt to explain the limitations or "how [Plaintiff's] cervical impairment precludes a reduced range of light work." R. 25. The ALJ also referenced that in January 2017, Dr. Su stated Plaintiff's symptoms should

improve six months after surgery. R. 24. Yet according to the ALJ's notes, Plaintiff had another surgery in January 2018, and still reported neck pain radiating into his arms. R. 22. Also, in October of 2019, Plaintiff was evaluated for a spinal cord stimulator for chronic neck pain. R. 22. Given that Plaintiff still reported pain two years after Dr. Su first opined that Plaintiff's symptoms would improve, the ALJ had no reason to rely on that opinion without seeking additional information. R. 22.

If the ALJ did not understand why the doctors gave the limitations they gave, the ALJ could have reached out to them for more information. *See Thompson v. Berryhill*, No. CV CBD-16-3867, 2018 WL 784064, at *3 (D. Md. Feb. 7, 2018) (where the court found that the ALJ failed to evaluate all relevant evidence in the case record, and the ALJ could have reached out to the plaintiff's "treating physician for clarification of his illegible visit notes."). Since the ALJ relied on Dr. Su's 2017 opinion that Plaintiff's symptoms would improve after six months, the ALJ could have reached out to understand why Plaintiff had additional surgeries, and why Dr. Su opined two years later, that Plaintiff was unable to perform work. Similarly, the ALJ could have reached out to Dr. Khan and Dr. Levin, to explain their findings. "The ALJ has a duty to fully and fairly develop the record." *Cook v. Heckler,* 783 F.2d 1168, 1173 (4th Cir.1986). The ALJ must also inquire fully into each relevant issue and address any ambiguities. *See Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962). The ALJ chose to ignore any ambiguities and misunderstandings from Plaintiff's treating physicians.

For the same reasons, the ALJ engaged in cherry-picking. The ALJ ignored relevant evidence and only found the state agency consultants' medical opinions persuasive. The ALJ explained that Dr. Totoonchie, and Dr. Najar's opinions were persuasive because they cited to relevant evidence, including the diagnostic imaging results–MRI. R. 25–26. However, as

Plaintiff argues, Plaintiff's treating physicians relied on the same evidence to form their conclusions. Both Dr. Su and Dr. Khan also used the MRI to support their findings, but the ALJ did not mention Dr. Su's findings based on the MRI, and with respect to Dr. Khan, the ALJ only stated that she did not understand how the limitations stemmed from the MRI. R. 24–25. The ALJ also accepted Dr. Levin's limitation that Plaintiff could only lift up to 20 pounds but found the rest of Dr. Levin's limitations "too restrictive," even though the ALJ complained that the only explanation Dr. Levin provided for his limitations was "see chart." R. 24–25. Thus it appears the ALJ favored the state agency consultants' opinions that pointed to a disability finding, and ignored evidence from Plaintiff's treating physicians that pointed to a disability finding.

      The ALJ also erred by assuming "if [Plaintiff] were as limited as Dr. Su suggests, he would be incapable of performing basic activities of daily living and would likely be confined to a nursing home." R. 24. "When assessing the effect of claimants' activities of daily living on their physical RFC, ALJs must be careful not to place too much emphasis on simple tasks that are insufficiently indicative of a claimant's ability to do work existing in the national economy." *Eiker v. Astrue*, No. CIV.A. CBD-11-3584, 2013 WL 2149755, at *3 (D. Md. May 15, 2013). "[A] claimant need not be constantly bedridden or completely incapacitated to be found disabled." *Morgan v. Barnhart*, 142 F. App'x 716, 729 (4th Cir. 2005) (quoting *Trotten v. Califano,* 624 F.2d 10, 11–12 (4th Cir.1980)). Individual or sporadic instances of activity do not necessarily demonstrate a person's ability to work on a sustained basis for eight hours per day. *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days."). Further, the ability to engage in some light activity

does not necessarily translate into the ability to do substantial gainful activity. *See Morgan*, 142 F. App'x at 729 (finding improper the ALJ's adverse credibility judgment against a plaintiff who occasionally practiced needlepoint and crochet); *Higginbotham v. Califano*, 617 F.2d 1058, 1060 (4th Cir. 1980) ("The Secretary did not discharge his burden of proof that Higginbotham can do sedentary work by relying on the fact that she, at her own pace and in her own manner, can do her housework and shopping."); *McCoy v. Astrue*, No. 6:10-380-MBS, 2011 WL 2418681, at *12 (D.S.C. May 2, 2011) (finding improper the ALJ's adverse credibility judgment against claimant who would load dishwasher and fold clothes, and went to Aruba on his honeymoon), *report and recommendation adopted*, No. 6:10-0380-MBS, 2011 WL 2413177 (D.S.C. June 13, 2011); *Rainey v. Astrue*, No. 7:09-CV-74-BO, 2010 WL 2402891, at *2 (E.D.N.C. June 11, 2010) (rejecting ALJ's reliance on plaintiff's ability to do housework "at her own pace with periods where no work was performed"). Thus, even though the ALJ noted that Plaintiff could read, watch movies, and engage in podcasts, it was error for the ALJ to assume that Plaintiff could work, just because he could engage in some activities. R. 23.

As mentioned above, Plaintiff also raises other issues for review. However, in view of the Court's decision to remand the matter due to the improper evaluation of the medical opinion evidence, the Court declines to address the remaining issues. *See Brown v. Colvin*, 639 F. App'x 921, 923 (4th Cir. 2016) (declining to address all of a claimant's issues raised once the court decided to remand on one issue); *Edna Faye H. v. Saul*, No. TMD-18-581, 2019 WL 4643797, at *6 (D. Md. Sept. 24, 2019).

On remand, the ALJ should address the issues raised by Plaintiff. *Timothy H. v. Saul*, No. TMD 18-1675, 2019 WL 4277155, at *7 (D. Md. Sept. 10, 2019). In remanding this case, the Court expresses no opinion on whether the ALJ's ultimate decision that Plaintiff was not

disabled is correct or incorrect. *See Parker v. Comm'r, Soc. Sec.*, No. ELH-16-2607, 2017 WL 679211, at *4 (D. Md. Feb. 21, 2017).

### IV. Conclusion

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **GRANTS** Plaintiff's Alternative Motion and **REMANDS** this matter for further proceedings.

March 31, 2022

/s/
Charles B. Day
United States Magistrate Judge

CBD/pjkm